IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| TOBY THORNTON, | CASE NO. 1:23-CV-00032 |
| Plaintiff, | |
| v. | |
| AMERICAN INTERSTATE INSURANCE COMPANY, | **SECOND AMENDED COMPLAINT** |
| Defendant. | |

COMES NOW, Plaintiff Toby Thornton, and for his Second Amended Complaint against Defendant American Interstate Insurance Company ("American Interstate"), does hereby state, aver and allege the following:

**VENUE AND JURISDICTIONAL STATEMENT**

1. The facts set forth herein are alleged in support of Mr. Thornton's claim against American Interstate for its bad faith conduct in its handling of benefits awarded to Mr. Thornton as a result of Mr. Thornton's previously adjudicated workers' compensation claims which arose out of a motor vehicle accident on June 25, 2009, occurring while in the course and scope of his employment with Mr. Thornton's former employer, Clayton County Recycling.

2. At the time of his accident, Mr. Thornton was a resident of Monona, Clayton County, Iowa, and employed by Clayton County Recycling.

3. At all times relevant to the allegations stated herein, Defendant American Interstate was authorized to conduct business in the State of Iowa, providing insurance coverage for workers' compensation claims to employers, including to Clayton County Recycling.

4. Defendant, American Interstate, is a foreign corporation allowed to operate pursuant to the laws of the State of Iowa for the purpose of paying benefits to Iowa workers who are injured in the course of their employment with Defendant's insureds.

5. Clayton County Recycling is one of Defendant, American Interstate's, insureds and paid substantial premiums to Defendant so that coverage would be available to Clayton County

**EXHIBIT "A"**

Recycling employees who might be injured on the job, including during the coverage period when Mr. Thornton's work accident took place.

7. Many of the acts taking place as alleged below and giving rise to Mr. Thornton's bad faith claim against Defendant took place in and around Council Bluffs, Pottawattamie County, Iowa.

8. Defendant American Interstate was a party to a prior bad faith action filed by Mr. Thornton which resulted in two separate jury trials both trials held in Council Bluffs, Pottawattamie County, Iowa.

9. For the foregoing reasons, because the amount in controversy exceeds this Court's jurisdictional minimums, and for those reasons stated more fully below, this Court is vested with jurisdiction over the parties and venue is proper in the District Court of Pottawattamie County Iowa.

## FACTUAL ALLEGATIONS

9. Plaintiff re-alleges and incorporates paragraphs 1 through 8 herein by this reference.

10. On June 25, 2009, while operating a tractor within the course and scope of his employment with Clayton County Recycling, Mr. Thornton was involved in a horrific, catastrophic accident leaving him a quadriplegic ("the Accident").

11. There is no question that the Accident left Mr. Thornton is permanently and totally disabled.

12. Despite this undeniable conclusion, American Interstate denied Mr. Thornton benefits forcing extensive, lengthy litigation.

13. Lawsuits Mr. Thornton was forced to file against American Interstate include:
    a. Workers' compensation for a Permanent Total Disability ("PTD") determination;
    b. Alternate medical care for his treatment denied by Defendant;
    c. Workers' compensation for partial commutation; and
    d. District Court for bad faith.

14. As a result of these many lawsuits, it was determined that Mr. Thornton was permanently and totally disabled and entitled to lifetime benefits including medical care and other benefits to address his disabilities.

15. As a result of these many lawsuits, American Interstate was found to have acted unreasonably, in bad faith, and without regard for Mr. Thornton's rights or safety.

16. Two separate Pottawattamie County juries entered verdicts in favor of Mr. Thornton as a result of the prior bad faith actions.

17. The first bad faith action was tried in the District Court of Pottawattamie County Iowa in 2018 and resulted in a verdict in favor of Mr. Thornton. The Court used the following language in its Order on Post Trial Motions addressing American Interstate's argument that the punitive damages award was excessive, the Court found, "…the behavior in the case at bar is far more egregious than the behavior in similar cases justifying an even higher punitive damages award."

18. Unfortunately, despite the prior determinations against American Interstate and in favor of Mr. Thornton, American Interstate's bad faith conduct has persisted.

**COUNT I: DEFENDANT'S BAD FAITH DENIAL OF BENEFITS TO PLAINTIFF.**

19. Plaintiff re-alleges and incorporates paragraphs 1 through 18 herein by this reference.

20. On September 14, 2021, Mr. Thornton was told by his daily at-home care provider, Sue Rubendall, that her employer, Home Instead, was being sold and that the new owner would no longer be providing at-home assistance to Mr. Thornton. These services are necessary in light of Mr. Thornton's injury of June 25, 2009.

21. The threatened disruption of services was immediately communicated to Defendant's counsel. Rather than properly investigating the information, Defendant, through its attorney, stated that the information was untrue and that there would be no interruption in services. Being falsely reassured, Mr. Thornton undertook no further action at that time.

22. On October 1, 2021, Ms. Rubendall informed Mr. Thorton that, as previously reported, she had been terminated by the new owners of Home Instead. Again, this information was immediately communicated to Defendant through its attorney. Within the same email informing Defendant of this disruption in services, Mr. Thornton expressed his dissatisfaction with the lack of necessary care now being provided.

23. Although counsel for Defendant acknowledged the obligation to provide such care, no such arrangements had been made more than three weeks after first being alerted to the disruption.

24. Pursuant to Iowa law, a delay in providing benefits constitutes a denial of benefits.

25. Fortunately for Mr. Thornton, Ms. Rubendall had become almost a member of the Thornton family and continued to provide the same services she did while employed by Home Instead.

26. Unfortunately, Defendant refused to directly pay Ms. Rubendall for her services; instead, Defendant offered to pay Mr. Thornton a gross amount that would have been substantially less than it paid Home Instead for the same services.

27. Had Mr. Thornton agreed to Defendant's offer, Ms. Rubendall would have been deprived of the benefits she previously received while an employee of Home Instead, including state and federal withholding, mileage, and workers' compensation coverage.

28. The proffered arrangement would have also potentially placed Mr. Thornton in the position of Ms. Rubendall's employer, requiring him to withhold taxes or payments made to her for services provided.

29. Based on the foregoing, Mr. Thornton filed a Petition for Alternate Medical Care against Clayton County Recycling and Defendant American Interstate on October 6, 2021, requesting that Defendant be required to directly retain Ms. Rubendall at a salary of an amount equal to or greater than it previously paid Home Instead for the services.

30. The Alternate Medical Care hearing was held on October 18, 2021. As a result, the Deputy Worker's Compensation Commissioner found that the above-named Defendant had acted unreasonably and, therefore, ordered Mr. Thornton's application for alternate medical care be granted.

31. Defendant's aforementioned conduct constitutes a bad faith denial of benefits where Defendant knew or should have known no good faith basis existed for the denial.

32. As a result of Defendant's wanton and willful disregard for Mr. Thornton's needs, Mr. Thornton has suffered great mental anguish, inconvenience, and loss of enjoyment of life.

WHEREFORE Plaintiff prays for an order from this Court in favor of the Plaintiff and against Defendant for special, general and punitive damages, and attorney fees and costs in an amount to be proven at trial.

## COUNT II: DEFENDANT'S BAD FAITH FAILURE TO TIMELY PROVIDE PAYMENT TO SIEBERT MOBILITY.

33. Plaintiff re-alleges and incorporates paragraphs 1 through 32 herein by this reference.

34. Notwithstanding the extensive litigation brought about by the Defendant's behavior, Defendant has not been dissuaded from engaging in bad conduct to the detriment of Mr. Thornton.

35. Pursuant to Iowa law and as a result of prior litigation, Mr. Thornton is entitled to, among other things, drivable transportation that is maintained in working order and updated when updates are reasonable and necessary.

36. Mr. Thornton owns a Granite Chrysler Pacifica Limited van, a vehicle that is suitable for him to drive despite his physical limitations.

37. Mr. Thornton takes the van to Siebert Mobility in Iowa City, Iowa, anytime repairs or updates to the van are needed, for which Defendant is required to timely remit payment.

38. A repair estimate dated February 24, 2023, indicates the ramp base, extension, hinge and kickout cam/chain all needed to be replaced for a total of $1,791.08. Due to Defendant's continued failure to timely remit payment for repairs and/or updates to the van, Siebert Mobility declined to service Mr. Thornton's van without prepayment.

39. Mr. Thornton, through his undersigned counsel, contacted Defendant thorough Defendant's counsel in an effort to rectify the situation so the van repairs set forth above could be made as quickly as possible. In an email dated February 27, 2023, Defendant, through its counsel, indicated American Interstate would be issuing the payment directly to Siebert Mobility.

40. Despite Defendant's assurances that payment would be issued directly to Siebert Mobility for the van repairs to be done, payment had not been issued and repairs had not been made by April 11, 2023, when Mr. Thornton's counsel again reached out to Defendant through its counsel seeking an explanation for the delay.

41. Defendant's bad faith conduct forced Mr. Thornton to be without a working vehicle for a prolonged period of time, leaving him without any sense of normalcy.

42. Defendant continues to deny certain repairs to Mr. Thornton's vehicle.

43. Defendant's aforementioned conduct constitutes a bad faith denial of benefits where Defendant knew or should have known no good faith basis existed for the denial.

44. As a result of Defendant's wanton and willful disregard for Mr. Thornton's needs, Mr. Thornton has suffered great mental anguish, inconvenience, and loss of enjoyment of life.

WHEREFORE Plaintiff prays for an order from this Court in favor of the Plaintiff and against Defendant for special, general and punitive damages, and attorney fees and costs in an amount to be proven at trial.

### COUNT III: FAILURE TO PAY MILEAGE INCURRED FOR AUTHORIZED AND RELATED CARE.

45. Plaintiff re-alleges and incorporates paragraphs 1 through 44 herein by this reference.

46. As a part of any given claim under the Iowa Workers' Compensation Code sections, a responsible insurance carrier owes payment for mileage for the claimant's travel to medical appointments.

47. In the present matter, Defendant has had all necessary information to process said payments in a timely manner, particularly as the carrier is aware of each of Plaintiff's medical appointments, at or near to the time that the appointments take place.

48. In light of Plaintiff's physical limitations and by agreement of the parties, the Defendant promised to use the information it was collecting in order to process and pay Plaintiff for mileage as it came due or, at a minimum, on a quarterly basis.

49. Notwithstanding this agreement, its obligations, and Iowa law, Defendant failed to remit mileage payments to Plaintiff.

50. After being alerted to its failure to pay mileage, notwithstanding this agreement, its obligations, and Iowa law, Defendant has continued to refuse to pay Plaintiff these benefits.

51. Defendant's failure to pay Plaintiff benefits to which he is entitled, constitutes a denial of benefits.

52. Defendant has no basis for its denial as described above.

53. Defendant knew or should have known that its denial to pay benefits is without any good faith basis.

54. Defendant's aforementioned conduct constitutes a bad faith denial of benefits where Defendant knew or should have known no good faith basis existed for the denial.

55. As a result of Defendant's wanton and willful disregard for Mr. Thornton's needs, Mr. Thornton has suffered great mental anguish, inconvenience, and loss of enjoyment of life.

WHEREFORE Plaintiff prays for an order from this Court in favor of the Plaintiff and against Defendant for special, general and punitive damages, and attorney fees and costs in an amount to be proven at trial.

### COUNT IV: FAILURE TO REPLACE CONVERSION VEHICLE.

56. Plaintiff re-alleges and incorporates paragraphs 1 through 55 herein by this reference.

57. In addition to other benefits owed to Plaintiff, Defendant is obligated to provide transportation, including a vehicle appropriate in light of Plaintiff's physical condition.

58. Defendant's obligation in this regard is ongoing and when the vehicle becomes dangerous or its condition is beyond a usable state, the Defendant is obligated to replace the vehicle.

59. Plaintiff's vehicle has reached a state where its replacement is now necessary.

60. Despite alerting Defendant to the condition of the vehicle, Defendant refuses to replace the same.

61. Defendant's aforementioned conduct constitutes a bad faith denial of benefits where Defendant knew or should have known no good faith basis existed for the denial.

62. As a result of Defendant's wanton and willful disregard for Mr. Thornton's needs, Mr. Thornton has suffered great mental anguish, inconvenience, and loss of enjoyment of life.

WHEREFORE Plaintiff prays for an order from this Court in favor of the Plaintiff and against Defendant for special, general and punitive damages, and attorney fees and costs in an amount to be proven at trial.

### COUNT V: FAILURE TO PAY MEDICAL EXPENSES.

63. Plaintiff re-alleges and incorporates paragraphs 1 through 62 herein by this reference.

64. In addition to regularly scheduled appointments, Plaintiff occasionally has unplanned medical appointments, including emergency room visits.

65. Plaintiff alerts Defendant when such unplanned appointments take place so that Defendant can obtain the associated medical records and see that payments are made for covered treatment.

66. Defendant, however, has failed to pay for all such appointments, resulting in collection efforts directed by providers to Plaintiff.

67. In spite of follow-up requests, Defendant has failed to pay for all such care, thus delaying payments, which constitutes a denial pursuant to Iowa law.

68. Defendant's aforementioned conduct constitutes a bad faith denial of benefits where Defendant knew or should have known no good faith basis existed for the denial.

69. As a result of Defendant's wanton and willful disregard for Mr. Thornton's needs, Mr. Thornton has suffered great mental anguish, inconvenience, and loss of enjoyment of life.

WHEREFORE Plaintiff prays for an order from this Court in favor of the Plaintiff and against Defendant for special, general and punitive damages, and attorney fees and costs in an amount to be proven at trial.

### JURY DEMAND

Plaintiff Mr. Thornton hereby demands trial by jury of all issues so triable.

Dated: August ___, 2024.

TOBY THORNTON, Plaintiff,

By: */s/* _____
Tiernan T. Siems, AT0007313
ERICKSON | SEDERSTROM, P.C.
10330 Regency Parkway Drive
Omaha, NE 68114
(402) 397-2200
(402) 390-7137 Fax
tsiem@eslaw.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing *Second Amended Complaint* was served on August 28, 2024 upon:

Matthew D. Callanan, AT0011813
Michael S. Boal, AT0012649
Belin McCormick, P.C.
666 Walnut Street, Suite 2000
Des Moines, Iowa 50309-3989
mdcallanan@belinmccormick.com
msboal@belinmccormick.com
Attorneys for the Defendant

  by:  [   ]  U.S. Mail, postage prepaid
        [ X ]  Court's Electronic Filing System
        [   ]  E-mail

/s/ _____