IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| TOBY THORNTON, | ) | CASE NO. 1:23-CV-00032 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN INTERSTATE INSURANCE | ) | **BRIEF IN SUPPORT OF** |
| COMPANY, | ) | **DEFENDANT'S MOTION TO** |
| | ) | **COMPEL DISCOVERY RESPONSES** |
| Defendant. | ) | |

**Table of Contents**

Introduction ........................................................................................................................ 2

Background ......................................................................................................................... 3

Legal Argument ................................................................................................................. 9

    I.    *The Court Should Compel Thornton to Supplement His Answers to Interrogatories.* ....... 9

    II.    *The Court Should Require Thornton to Search All Document Repositories and Provide Responsive Documents* ................................................................................................... 14

    III.    *The Court Should Find Thornton Waived Privilege or Require Him to Provide an Appropriate Privilege Log.* ........................................................................................... 15

    IV.    *The Court Should Award American Interstate Fees for the Cost of this Motion.* .......... 18

Conclusion ....................................................................................................................... 19

**Introduction**

"When an individual voluntarily chooses to participate in [a] lawsuit, he takes on the obligation to provide discovery about his claim[s]." *Morangelli v. Chemed Corp.*, No. 10 CIV 00876, 2011 WL 7475, at *1 (E.D.N.Y. Jan. 1, 2011). This action has been pending for more than a year and a half, but Thornton refuses to search document repositories; continues to withhold documents; refuses to identify his alleged harms and the contours of his claims; and continues to withhold nonprivileged information as "privileged."

The issue is simple: Can a Plaintiff refuse to identify his alleged harms, refuse to search document repositories, refuse to provide relevant information, and simply claim "privilege!" without providing information about the alleged privilege? The answer must be no. Thornton's repeated flouting of the Rules must end, and sanctions should be entered.

Exacerbating the issues is Thornton's misunderstanding of privilege. Despite this Court already holding *in this case*: "a party withholding documents must expressly raise privilege and describe the nature of each withheld document 'in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim,'" (ECF No. 70 at 4), Thornton stated for **months** no privilege log was necessary. (See, e.g., Callanan Decl., Ex. 1 at 22:5-9). Thornton has not met "the burden of demonstrating the factual basis for the privilege." (ECF No. 70 at 5 (citing *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1991)). At Thornton's deposition, Thornton's counsel doubled-downed on his misinterpretation of privilege:

> MR. SIEMS: [Privileged information is] not just legal advice. It is about communications with a client and **manner of communications**, so **any question** – it doesn't have to be legal advice. I could ask him how the weather is, and that's communication with a client. And so you're asking him for manner of communication with his attorney, and that is protected by attorney-client privilege. (Callanan Decl., Ex. 1 at 22:17-23:2)

> MR. SIEMS: The amount of communication, the method of communication, the timing of communication. These are all privileged subjects that you are not entitled to know about. (Callanan Decl., Ex. 1 at 167:10-21).

Weeks after repeatedly telling his client not to answer questions such as "do you text your attorney?" and stating that every detail about communication is allegedly privileged, Thornton's counsel, for the first time provided a bare-bones "privilege log," that includes **only** text messages, without detail. (Callanan Decl., Ex. 2) A separate document—Thornton's counsel's billing records—however demonstrates Thornton and his counsel email frequently. (Callanan Decl., Ex. 3) Thornton provides no excuse as to why such emails are not on his privilege log.

In sum, Thornton improperly tries to foist the burden on American Interstate to understand Thornton's claims against it, despite his obligation to reveal his claims. Thornton refuses to search emails, despite third-party disclosures demonstrating Thornton uses email. Thornton hides behind an alleged "virus" on his phone to avoid providing text messages and photographs, but he does nothing to explain why he did not attempt to obtain such information long before the alleged virus. And he refuses to follow the basic privilege-related rules, instead having his counsel instruct him not to answer and forcing American Interstate to file this motion.

### Background

Plaintiff filed his case in September 2023, originally asserting American Interstate engaged in two instances of bad faith. Initial disclosures were to be exchanged by January 26, 2024. (Callanan Decl., Ex. 4)

Thereafter, American Interstate sought discovery on several items, including requesting information regarding Thornton's damages, the basis of those damages, and specific explanations of any harm. (Callanan Decl. ¶ 11) Thornton responded on March 26, 2024, but he did not lodge a single objection to privilege, nor did he provide fulsome answers or appropriate document

production. (Callanan Decl. ¶ 12) American Interstate followed up with a letter, in May 2024, following a few conferences with opposing counsel, explaining there were deficiencies. (Callanan Decl. ¶ 13)

Plaintiff eventually supplemented his answers in May, but the supplements were largely unhelpful. They simply directed American Interstate to a page-and-a-half "expert report." (*See* Callanan Decl., Exs. 5; 6; 7). On June 14, Plaintiff again "supplemented," but the supplements remained useless. (Callanan Decl., Ex. 8). When asked about the basis for his damages, he simply responded: "Plaintiff restates his above Answer and adds that his damages are fluid in nature and in an amount to be determined by the fact finder at the trial of this matter," without describing the basis for any alleged harm. (Id.)  American Interstate also had conversations with Plaintiff's counsel regarding a privilege log. (Callanan Decl. ¶ 16) Rather than provide any privilege log, Plaintiff stated in several responses: "No privilege log is required." (Callanan Decl., Ex. 9).

After a motion for partial dismissal was denied (ECF No. 14), American Interstate served additional discovery relating to the "second" claim—relating to an allegation certain repairs were not completed in a timely fashion. (Callanan Decl. ¶ 18). Thornton again did not object on the basis of privilege to any requests. (Callanan Decl. Ex. 10). When providing documents, Thornton included a text message between he and an unnamed person discussing an emergency room visit. (Callanan Decl. ¶ 20). Within answers to interrogatories, Thornton still refused to explain any type of alleged harm, simply repeating—generically—"Because of Defendant's continuous wanton and willful disregard for Plaintiff's needs, Plaintiff has suffered and continues to suffer great mental anguish, inconvenience, and loss of enjoyment of life." (Callanan Decl., Ex. 10 e.g., Rog. No. 15).

The Court granted a motion to amend Thornton's complaint in October (ECF No. 40). Thornton added another three bad faith claims. The parties exchanged supplemental initial

disclosures in December 2024. (Callanan Decl. ¶ 21) In his supplemental initial disclosures, Thornton now asserted he suffered $75,000 worth of harm for each of his five alleged bad faith claims, which "accounts for past mental and physical pain and suffering, future mental and physical pain and suffering, and loss of function of mind and body," as well as a punitive damages figure of nearly $3.7 million and approximately $35,000 in alleged legal fees. (Callanan Decl., Ex. 11).

On January 27, 2025, American Interstate sought discovery on the new claims as well as certain supplements to its previously served discovery. (Callanan Decl. ¶ 23). Approximately 10 days earlier (January 17), American Interstate also sent a subpoena to Tim Thornton, Plaintiff's brother, requesting information and documents. (See ECF No. 55-1).

Although Thornton claimed previously that "[n]o privilege log is required" in response to several items, Thornton moved to quash the subpoena served on his brother based on a privilege assertion. (*See generally* ECF No. 55 et seq.). The Court rejected Thornton's argument and explained the obligations of a party that is claiming privilege:

> Plaintiff did not provide a privilege log ever in this litigation. …
> Under Fed. R. Civ. P. 26(b)(5)(A), a party withholding documents must expressly raise privilege and describe the nature of each withheld document 'in a manner that, without revealing information itself privileged or protected will enable the parties to assess the claim." … Plaintiff has asserted the privilege as to these documents, and thereby has the burden of demonstrating the factual basis for the privilege. … In violation of the rules, Plaintiff has not described the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(ECF No. 70 at 4-5). The Court explained that where a party claims privilege it "must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." (ECF No. 70 at 6). The Court

cited an Eighth Circuit opinion that explained the proper way to do this is to "produce[] a detailed privilege log stating the basis of the claimed privilege for each document in question." (See id. (quoting *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1991)). The Court warned the failure to claim privilege and provide a privilege log while simultaneously withholding information on the basis of privilege "is a serious discovery violation," and it "could merit the serious sanction" of waiving privilege. (ECF No. 70 at 6).

Despite the Court's clear direction, when Thornton responded to discovery on March 18, 2025 (just four days after the Court denied the Motion to Quash), Thornton *again* failed to state he was withholding any information on the basis of privilege. (Callanan Decl., Exs. 12; 13). Several of the interrogatories and requests dealt with basic issues regarding Thornton's claims: e.g., what alleged events were the basis of bad faith claims; how were damages calculated; etc. (*See id.*). Rather than address these issues, Thornton frequently directed American Interstate to unnamed and unknown "email sent to Defendant's attorneys," "prior discovery responses," "medical records collected by Defendant's representatives," and information "in possession of Defendant's attorney" when responding to interrogatories. (See, e.g., Callanan Decl., Ex. 12 Resp. to Rogs Nos. 32, 34, 36, 37). With respect to requests for documents, Thornton repeated the same refrain for every response (and never raised privilege): "To the extent that such documents exist and/or are reproduceable, please see those documents previously provided to Defendant, already in Defendant's possession or otherwise disclosed herewith." (*See generally* Callanan Decl., Ex. 13).

On April 4, 2025, American Interstate sent a lengthy letter to Thornton regarding various discovery deficiencies. (Callanan Decl. Ex. 14). Plaintiff did not respond in writing to the letter,

and instead the parties moved forward with Thornton's deposition on April 14, 2025, hoping the deposition could provide some clarity.

Rather than clarity, the issues were exacerbated. Despite never raising privilege in any discovery responses, when presented a text message between an unnamed party and Thornton that was provided on September 9, 2024, by Thornton and then reproduced by American Interstate on December 6, 2024, as part of American Interstate's supplemental disclosures, Thornton's attorney explained the text message "appears to be a text between me and Toby." (Callanan Decl., Ex. 1 at 17:13-23). Thornton's counsel claimed that he "only just now [was] realizing that this inadvertent disclosure was made." (Callanan Decl., Ex. 1 at 18:12-15).

Later, Thornton's counsel repeatedly told Thornton not to answer questions on the basis of privilege, including factual information about communications:

- (Callanan Decl., Ex. 1 at 21:18-22) Q. You talk to your attorney through texts; right? MR. SIEMS: Don't answer that. That's privileged. I'm going to instruct him not to answer.

- (Callanan Decl., Ex. 1 at 22:11-16) Q. Mr. Thornton, you've communicated with your attorney through, I guess, in writing in some way, text messages or e-mail; correct? MR. SIEMS: Don't answer that. That's attorney-client privilege. I will instruct you not to answer that.

- (Callanan Decl., Ex. 1 at 157:11-14): Q. Mr. Thornton, your attorney never shared his document with you then. Is that correct? MR. SIEMS: Objection that calls for attorney-client privilege. Don't answer the question.

- (Callanan Decl., Ex. 1 at 167:10-21). Q. Mr. Thornton, that means your attorney has not forwarded these [emails] to you; correct? MR. SIEMS: No, don't answer that. That's attorney-client privilege. … MR. SIEMS: The amount of communication, the method of communication, the timing of communication, these are all privileged subjects you are not entitled to know about.

Even after asking a deposition exhibit not to be used and objecting on the basis of privilege, Thornton's counsel explained "[t]here's not been any motion to compel. There's not been any activity that would require a privilege log for communications between the attorney and his client." (Callanan Decl., Ex. 1 at 22:5-9).

During his deposition, Thornton was unable to testify as to when he received certain items or sent them to his attorney (e.g., certain bills he claims American Interstate paid too late) or when his attorney forwarded such bills to American Interstate. (See, e.g., Callanan Decl., Ex. 1 at 118:21-119:6, 129:3-13).[1] Thornton also admitted that he had not searched his email for documents. (See Callanan Decl., Ex. 1 at 25:23-26:6; 171:23-172:1). Thornton also explained he did not and had not searched his text messages in depth, other than between he and his brother. (Callanan Decl., Ex. 1 at 172:2-19). Instead, he asserted his text messages had all vanished in November 2024 due to a virus on his phone. (Callanan Decl., Ex. 1 at 24:12-24). He could not explain why he had not searched his phone and provided text messages before November 2024. (*Id.*).

Following the deposition and after American Interstate pointed out Thornton had never verified interrogatory responses, Thornton "supplemented" his responses by adding to various answers, "Please also see deposition of Toby Thornton (with exhibits) taken on April 14, 2025" and/or "Additionally, please also see deposition testimony of Sue Rubendall (with exhibits) taken on April 14, 2025." (Decl. Callanan Ex. 16) Thornton *again* did not claim privilege. (See id.)

Finally, on May 7—the last day of discovery—when Thornton answered additional discovery American Interstate had served in April, he provided his first and only privilege log. (Callanan Decl. ¶ 7; 2). The privilege log was two pages, and it simply stated the dates of various text messages, very vague subjects, and claimed all such texts were attorney-client privileged. (Callanan Decl. Ex. 2).

Absent from Thornton's privilege log was reference to any email. This was surprising because Thornton produced—also for the first time—an invoice from Erickson Sederstrom (counsel's law firm), purportedly in support of his claim for damages. (See Callanan Decl. Ex. 3).

---

[1] Although Toby Thornton reported sending a screenshot of certain bills to his brother, Tim, Tim testified he did not receive such screenshots. (Callanan Ex. 14 at. 88:24-89:18; 197:16-198:18)

The Invoice specifically references email exchanges with Mr. Thornton on several dates, including: 10/12/21; 1/20/22; 1/21/22; 2/4/22; 2/16/22; 2/21/22; 2/28/22; 5/17/22; 5/26/22; 6/3/22; 8/31/22; 6/5/23; 3/22/24; 4/1/24; 4/15/24; 6/3/24; 6/6/24; 6/11/24; 6/12/24; 6/18/24; 7/23/24; 10/17/24; 10/18/24; 12/26/24; 4/16/25; 5/1/25. (See *id.*) The invoice also references other "messages" with Mr. Thornton, but remain unclear what types of messages are being referenced (e.g., an entry on 10/27/21).

At this juncture, several of Thornton's discovery responses remain deficient. He has not searched appropriate document repositories. He has not provided information regarding his claims. And he has not sufficiently claimed privilege in any way.

## Legal Argument

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). It does not appear Thornton objects to the relevance or propriety of any specific items sought by American Interstate. Rather, it appears Thornton believes his evasive, vague responses are appropriate and he need not comply with his obligations under the Federal Rules of Civil Procedure. Thornton setting his own rules is not appropriate. "Plaintiff cannot file a lawsuit in federal court and then blatantly refuse to follow basic procedural rules or rules of discovery." *Kent v. Off. of Hum. Res. Manager*, No. 1:12CV176, 2013 WL 3730090, at *6 (W.D. Mich. July 15, 2013). An order compelling discovery is appropriate, as is an award of fees to American Interstate for having to bring this motion in the first instance.

**I.    *The Court Should Compel Thornton to Supplement His Answers to Interrogatories.***

A party must answer interrogatories "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "Litigation in general and discovery in particular [] are not one sided." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014). That means it is not American

9

Interstate's burden to piece together what Thornton might argue. Mr. Thornton's improper attempt to thrust the burden onto American Interstate is conspicuous from the interrogatory responses he has provided; they are improper. "[E]vasive or incomplete disclosure[s], answer[s], or response[s] must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Generic references to documents, email, medical records, or depositions are improper. To the extent a party relies on certain document production to avoid providing responses to Interrogatories, Rule 33(d)(1) requires the party to "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Where a party "generally refer[s] to documents previously produced, without identifying their Bates number or when they were produced," that party has not "sufficiently identif[ied] the documents under Rule 33." *See Weems Indus., Inc. v. Teknor Apex Co.*, No. 20-cv-108-LTS-KEM, 2021 WL 7185069, at *2 (N.D. Iowa Dec. 8, 2021). Frequent references to "email sent to Defendant's Workers' Compensation attorney," or "prior discovery responses" does not satisfy the burden under Rule 33. Similarly, answers like "see deposition of Shane Hook," or "see deposition of Toby Thornton," without identifying what portions of the transcript are being referenced is improper. Thornton has failed to comply with Rule 33(d)(1), assuming that was his intent in the first instance.

Thornton also fails to address the contours of his claims and damages. Contention interrogatories are appropriate: "The purpose of such interrogatories is to help the requesting party understand the basis for the claims levied against them and prepare a defense. Contention interrogatories can also help narrow the issues at trial." *See, e.g.*, *Smartmatic USA Corp. v. Lindell*, 2023 WL 6890929, at *7 (D. Minn. Oct. 19, 2023). In other words, American Interstate is entitled

to know the precise claims—what mileage; what medical appointments; what van repairs—Thornton intends to pursue.

The entitlement to information also goes to damages. A party is entitled to know the types, amounts, and bases of damages. Rule 26 itself lists as "required disclosures" information regarding damages, including the obligation of a disclosing party to "make available for inspection and copying … the documents or other evidentiary material … on which each computation is based, including materials **bearing on the nature and extent of injuries suffered**." Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added). Pursuant to Rule 26(e)(1), "[a] party who made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Kutz v. NGI Capital, Inc.*, Case No. 22-cv-1623, 2023 WL 3790766, at *2 (D. Minn. June 2, 2023) (finding that Kutz cannot simply wait until she receives discovery materials from Defendants before she complies with her discovery obligations and can seasonably supplement her initial disclosures and discovery responses consistent with Rule 26(e)) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)).

In short, a party should not have to guess what it might face at trial. At this juncture, Mr. Thornton has refused to even identify the details about the claims he is bringing. This is contrary to the goals of Defendant's contention interrogatories, and it belies the goals of discovery. Liberal discovery is intended to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extend." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958); *see also Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992) ("Discovery rules are to be broadly and liberally construed in

order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'") (citation omitted); *id.* n.1 (quoting *Procter*). The citations for this proposition are limitless, and the Southern District of Iowa has long upheld fair and full discovery, including a plaintiff's obligation to inform a defendant of the details of the claims it intends to pursue and the basis of its complaint.

Below are specific interrogatories that Plaintiff has failed to answer properly.

**Damages- and Harm-Related Interrogatories (Nos. 8, 10, 15, 22, 39-43).**

- **Rog No. 8**: This asks Mr. Thornton to identify specific details about the alleged harm relating to Susan Rubendall issue in this case (i.e., the allegation of bad faith relating to Ms. Rubendall's termination from Home Instead). Mr. Thornton has failed to identify any specific instances of harm related to this issue and in this matter.

- **Rog No. 10**: This interrogatory requests details about the **basis** of damages—i.e., what kinds of loss of function of body and mind (both past and future), the types and manifestations of physical and mental pain and suffering (both past and future), and punitive damages **in this case** and related to the allegations of bad faith **in this case**. This is more than just identifying categories of alleged damages. It is identifying the damage itself. What function was lost, for example? What past physical pain and suffering took place? What future pain and suffering will occur?

- **Rog No. 15**: This again requests Mr. Thornton to detail harm about any alleged transportation. Generic allegations are improper.

- **Rog No. 22**: This requests information about Mr. Thornton's exercise and diet. Mr. Thornton has claimed immense weight loss as a harm here, and he has blamed American Interstate for the weight loss. The response discusses allegedly why Mr. Thornton changed his routine but does not actually answer the interrogatory—which would discuss what changes he made. Did Mr. Thornton stop consuming alcohol entirely? How did that compare with his prior alcohol consumption? How did his diet change?

- **Rog Nos. 39-43**: These are a variety of questions aimed at information regarding the allegations of damages as they purportedly relate to each alleged claim. American Interstate is entitled to know the claims against it and what it must defend against.

- **Rog No. 44**: This interrogatory requests information regarding the alleged damage figures from initial disclosures. American Interstate is entitled to this information. How, exactly, was Mr. Thornton allegedly injured and what injuries has he suffered caused by the bad faith alleged in this case?

**Interrogatories related to communications with others and/or lacking necessary details (Nos. 34/35):**

- **Rog No. 12**: This interrogatory asks Mr. Thornton to describe communications with Siebert Mobility, Sautters Auto, and Meyer's Auto Service (and others). The answers to this interrogatory does not provide sufficient specificity. When did Mr. Thornton allegedly talk to someone from Sautters? Who? Did he author the letter from Sautters or did someone else? How was it transmitted? These are all questions to which American Interstate is entitled to answers. These questions are even more important in light of several signed declarations by Andrew Meyers, who stated he did not inspect Thornton's van like Thornton claimed, and from Tim Sautter and Nick Sautter, who both stated they did not write the purported "recommendation" Thornton asserts they wrote. (Callanan Decl., Exs. 17; 18; 19).

- **Rog No. 34/35:** These interrogatories seek information about Mr. Thornton's efforts to obtain a replacement van, including with whom he discussed a vehicle replacement, when, and how he did so.

**Interrogatories related to defining the contours of Thornton's claims (Nos. 16, 27, 28, 31):**

- **Rog No. 16**: This request asks Mr. Thornton to identify all items Mr. Thornton believes were improperly denied or delayed relating to transportation.

- **Rog No. 27:** This interrogatory requests information on the alleged "mileage" issue. Plaintiff refuses to address the alleged mileage he was not compensated for. It is unclear when Mr. Thornton (or his representatives) shared certain information. For example, Tim Thornton emailed Tiernan Siems on June 13, 2024, and included a spreadsheet of mileage. Through depositions, it has become clear that spreadsheet was not shared with American Interstate. It is unclear if this is the only mileage that is being requested or there is more.

- **Rog. No. 28:** This interrogatory requests information about the alleged "agreement" to pay mileage. No witness could testify to this information.

- **Rog No. 31:** The requests asks Thornton to identify when he requested mileage reimbursement from American Interstate. Thornton refuses to identify when he requested mileage, instead he simply generically references "email sent to Defendant's attorney."

Thornton has failed to provide the fulsome, candid response required by the Rules. *See, e.g.*, *Marquette Bus. Credit, Inc. v. Gleason*, No. 14-CV-354 (MJD/LIB), 2015 WL 12776599, at *3 (D. Minn. Jan. 30, 2015) ("All parties … have an affirmative duty to respond to discovery requests and make reasonable, diligent efforts to produce truthful, discoverable information."); *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 609 (D. Neb. 2001) ("The parties have a duty to

provide true, explicit, responsive, complete and candid answers to discovery[.]"). Thornton's conduct "must be treated as a failure to…respond," and an order compelling compliance with Rule 33 is necessary. *See* Fed. R. Civ. P. 37(a)(4); Fed. R. Civ. P. 37(a)(1).

**II.** ***The Court Should Require Thornton to Search All Document Repositories and Provide Responsive Documents***

A party has an obligation to search his documents and provide responsive information when it is requested. *See generally* Fed. R. Civ. P. 34. Thornton has objected to only a few document requests, but he nonetheless has failed to search his emails and search his text messages. In modern litigation, searches for emails and text messages are necessary and appropriate.

Thornton did not object to any searches, nor did he lodge any objections to burden. Instead, he generally admitted he simply did not search (Callanan Decl., Ex. 1 at 171:23-172:22):

> Q. Have you searched your e-mail and provided e-mails to your counsel in response to discovery requests.
> A. I don't look at every e-mail I get.
> Q. Have you searched your text messages and provided text messages to your counsel responsive to discovery requests?
> A. Between me and my brother Tim, we sent text messages …
> Q. Other than your brother Tim, did you search any text messages in response to discovery?
> A. Just me and Tim's ….
> Q. You didn't provide any text messages from anyone other than Tim; correct?
> A. No.

(*See also* Callanan Decl., Ex. 1 at 25:13-26:6) (Q. Have you searched for those e-mails in this action? A. No."))

Although Mr. Thornton asserted his phone got a virus in November 2024, he did not explain why he did not search for any text messages prior to November 2024. (E.g., Callanan Decl., Ex. 1 at 24:10-25:2). Thornton has since produced a few text messages, but he still has not provided a single email from his account. At a minimum, Thornton should be required to search his emails and produce responsive documents.

III.    ***The Court Should Find Thornton Waived Privilege or Require Him to Provide an Appropriate Privilege Log.***

After stating for more than a year that he did not require a privilege log, Thornton provided a so-called "privilege log" on the final day of discovery, May 7, 2025. But this log is insufficient to test the alleged privilege. And it does not satisfy American Interstate's need to know when certain documents and information were shared between Mr. Thornton and counsel.

Indeed, while an unreasonable delay may be relevant to bad faith and may constitute bad faith in certain circumstances, the reason and circumstances for that delay are highly important. *See Thornton v. Am. Interstate Ins. Co.*, 940 N.W.2d 1, 12-13 (Iowa 2020). Where a delay is attributable to an insured, there is no bad faith. *See id.* at 13 ("Delays caused by the insured cannot be attributed to the insurer."). Thus, if it turns out counsel had received documents but withheld them from American Interstate (as has been shown) or Thornton had failed to provide information to his counsel to provide to American Interstate, these items are highly relevant to this case.

The privilege does not protect the disclosure of factual information. *See, e.g.*, *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1205-1206 (8th Cir. 1982). When Mr. Thornton obtained a certain piece of information or when it was provided to his attorney, for example, is not privileged; these are factual items. Second, the privilege "protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *United States v. Ivers*, 967 F.3d 709, 716 (8th Cir. 2020). It **does not** protect mere communication to have an attorney pass something along (e.g., a bill). In *Ivers*, for example, the Court found a single phone call was a mixed bag of privilege: "The first part of the call in which Ivers was actually receiving legal advice is easily severable form the second part of the call, in which Ivers ranted about and threatened Judge Wright." *See id.* at 717. Another apt description: "The attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or

15

advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity. A communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977).

Specifically, courts have found this type of "transmittal" information is not privileged. *See, e.g.*, *P&B Marina, Ltd. v. Logrande*, 136 F.R.D. 50, 53-54 (E.D.N.Y. 1991) ("Such transmittal letters …. That do not include legal advice nor disclose privilege matters are not subject to the attorney-client privilege."); *see id.* ("The privilege protects the substance of communications …"). "Only the communication between the attorney and the client itself is privileged; the underlying facts as well as the factual circumstances surrounding the attorney-client relationship are not privileged." *Scott Paper Co. v. United States*, 943 F. Supp. 489, 499 (E.D. Pa. 1996) (citing *UpJohn Co. v. United States*, 449 U.S. 383, 389 (1981)). In other words, to the extent Thornton is withholding information simply because his counsel is involved, this is improper. *See Meredith*, 572 F.2d at 602. And, unlike Thornton's counsel apparently believes, not every communication with counsel is privileged:

> MR. CALLANAN: Mr. Siems, I'm just curious; could you describe the legal advice that I'm seeking with that question [about how Mr. Siems and Thornton communicate]? MR. SIEMS: It's not just legal advice. It is about communications with a client and **manner of communications**, so **any question** – it doesn't have to be legal advice. I could ask him how the weather is, and that's communication with a client. And so you're asking him for manner of communication with his attorney, and that is protected by attorney-client privilege. (Callanan Decl., Ex. 1 at 22:17-23:2)
>
> [In response to a question as to whether certain emails were sent to Thornton]. MR. SIEMS: No, don't answer that. That's attorney-client privilege. MR. CALLANAN: I will disagree. Mr. Siems, could you please explain what legal advice that would be revealing by saying whether he received this or not? MR. SIEMS: The amount of communication, the method of communication, the timing of communication. These are all privileged subjects that you are not entitled to know about. (Callanan Decl., Ex. 1 at 167:10-21).

16

Beyond this, however, Thornton has failed to comply with his obligations under Rule 26 if he plans to claim privilege. A party resisting discovery based on the attorney-client privilege bears the burden of establishing that the privilege or immunity applies. *See Ivers*, 967 F.3d at 715. As this Court has recognized *in this case*, Rule 26(b)(5) requires a party withholding documents or other information based on the attorney-client privilege to "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id.* (See ECF no. 70).

To satisfy Rule 26(b)(5), the party asserting privilege must provide a privilege log that describes in detail the documents or information claimed to be privileged and the precise reasons the materials are subject to the privilege asserted. *See Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997); *Golden v. Stein*, No. 4:18-cv-00331-JAJ-CFB, 2020 WL 1487306 (S.D. Iowa Mar. 4, 2020) (ordering production of privilege log); *Catholic Mut. Relief Soc'y of Am. v. Arrowood Indem. Co.*, No. 17-CV-3141 (JRT/LIB), 2019 WL 4897159, at *7–8 (D. Minn. Jan. 9, 2019). The information provided in the privilege log must be sufficient to enable opposing counsel and the court to determine whether each element of the asserted privilege is satisfied. *See Williams v. Hy-Vee, Inc.*, No. 4:22-cv-00025-RGE-HCA, 2023 WL 2069014 (S.D. Iowa Jan. 23, 2023) (ordering supplementation of log to comply with Rule 26(b)(5)); *United States v. R.J. Zavoral & Sons, Inc.*, No. 12-CV-668 (MJD/LIB), 2014 WL 12756821, at *16 (D. Minn. Apr. 23, 2014); *Honeywell Int'l Inc. v. Furuno Elec. Co.*, No. 09-CV-3601 (MJD/TNL), 2013 WL 2385224, at *3 (D. Minn. May 30, 2013). Normally, this log will also come accompanied by an explanatory affidavit. *See St. Paul Reins. Co. Ltd. v. Comm. Fin. Corp.*, 197 F.R.D. 620, 628, 640-41 (N.D.

Iowa 2000) (finding plaintiffs waived privilege where their log failed to provide "detail[]" and did not include an "adequate statement of the factual basis for asserting the privileges").

Thornton's approach falls well short of compliance with Rule 26. First, Thornton denied he had any privileged information he was withholding. It was only at his deposition when presented with a text message he had previously disclosed nine months prior that his counsel suddenly claimed privilege. Second, Thornton's well-belated "privilege log" fails to provide sufficient information for American Interstate to test privilege. It does not provide what type of legal advice is at issue or the topics upon which legal advice was sought, for example. Third, Thornton's disclosure of Erickson Sederstrom invoices demonstrates any alleged privilege log is incomplete. On more than 25 occasions, the Erickson Sederstrom invoice mentions emails with Thornton, but not a single email can be found on the privilege log.

At this juncture, Plaintiff has failed to adequately and properly assert privilege, and any privilege should be waived. *See St. Paul Reins.* at 640-41. Not only did Plaintiff attempt to conceal from American Interstate that he was withholding documents on the basis of privilege in the first instance, when he finally admitted documents were withheld, he *still* apparently is withholding documents without disclosing their existence to American Interstate (e.g., the emails referenced in the invoice). By failing to expressly claim privilege, failing to provide sufficient information to allow American Interstate to assess privilege, providing at least one privileged document only to later claw it back, and concealing the existence of additional privileged materials, Thornton has waived any claim of privilege. Privilege should be deemed waived, and Thornton should be required to provide American Interstate responsive documents.

IV.    ***The Court Should Award American Interstate Fees for the Cost of this Motion.***

Under Rule 37(a)(5)(A), when a Court grants a motion to compel, it "must … require the party or deponent whose conduct necessitated the motion, the party or attorney advising that

conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." If the Court grants this Motion, the Court must award fees because none of the exceptions apply. Defendants made several good-faith attempts to obtain discovery without the Court's involvement; there is no justification for Thornton to provide evasive answers, despite several opportunities to fix the issues; to fail to even search his email for responsive documents; and to conceal privileged documents and withhold information on the basis of privilege; and it would not be unjust to require Thornton to pay American Interstate's fees relating to this motion. Fed. R. Civ. P. 37(5)(A).

<u>**Conclusion**</u>

Thornton's discovery responses are improper. He has not provided appropriate interrogatory responses; he has not sufficiently searched for responsive documents; and he has failed to adequately claim or provide information regarding privilege. He should be required to supplement his interrogatory answers, provide additional documents, including those allegedly withheld as privileged, and pay American Interstate's fees for this Motion.

Respectfully submitted,

BELIN McCORMICK, P.C.

*/s/ Matthew D. Callanan*
Matthew D. Callanan
Michael S. Boal
666 Walnut Street, Suite 2000
Des Moines, IA  50309-3989
Telephone:  (515) 243-7100
Facsimile:  (515) 558-0639
mdcallanan@belinmccormick.com
msboal@belinmccormick.com
ATTORNEYS FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify on May 21, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following:

Tiernan T. Siems
Erickson Sederstrom, P.C.
10330 Regency Parkway Drive
Omaha, NE  68114
tsiem@eslaw.com
cc:  sscho@eslaw.com
ATTORNEYS FOR PLAINTIFF


Signature:    */s/ Stephanie Anderson*
A0811\0004\(4601696

20